**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CORDIA RENEE ARMSTRONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:16-CV-156 (MTT)** |
| | ) | |
| | ) | |
| **TRAVELERS INDEMNITY COMPANY** | ) | |
| **OF CONNECTICUT,** *et al.,* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Defendant Willie James Wimberly contends that he is a non-diverse party and thus has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Doc. 17. For the following reasons, the Motion is **DENIED**.

## I.     BACKGROUND

The Plaintiff's Complaint, filed on April 26, 2016, alleges that Wimberly, while drunk, rear-ended the Plaintiff's car on November 8, 2014. Doc. 1. As a result, criminal charges were filed against Wimberly, and they apparently remain pending. *See* Doc 17-2. The Plaintiff, a Georgia resident, alleges that Wimberly was domiciled in Michigan at the time the lawsuit was filed. *Id.* at ¶ 10. In his motion, Wimberly contends that when the lawsuit was filed he lived in Georgia and intended to remain there. Doc. 17. In response, the Plaintiff argues that Wimberly was clearly domiciled in Michigan, and he has not proved a change in his domicile. Doc. 23.

## II.   <u>DISCUSSION</u>

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (internal citation omitted). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232-33 (internal quotation marks and citation omitted).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233 (internal citation omitted).  Wimberly has introduced material extrinsic from the pleadings, and the Court will look to the Complaint and the parties' extrinsic evidence to determine whether the Plaintiff has established subject matter jurisdiction.

An action based on diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs.[1]  28 U.S.C. § 1332(a).  Diversity generally turns on the status of the parties at the time the action is brought. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal citation omitted).  A person is a citizen of the state in which he or she is domiciled; mere presence is insufficient to establish citizenship. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).[2]  "Residence in fact, and the intention

---

[1] The Plaintiff asserted that her total damages exceed $75,000, exclusive of interest and costs.  Doc. 1 at ¶ 10.  The amount in controversy is not contested.

[2] Decisions of the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981 are binding precedent on the United States Court of Appeals for the Eleventh Circuit. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

of making the place of residence one's home, are essential elements of domicile." *Id.* The party invoking a federal court's jurisdiction bears the burden to prove by a preponderance of the evidence that jurisdiction exists. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (internal citation omitted).

Once a party's former domicile is established, however, the court may presume the former domicile continues to exist. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007). A party alleging a change in domicile bears the burden of proving the change. *Id.* A change of domicile is implemented by (a) taking up residence in a different domicile, and (b) showing an intent to remain there. *McCormick*, 293 F.3d at 1258. Courts consider various factors to determine domicile: where the party is registered to vote; the state issuing the party's driver's license or official identification; where the party paid income taxes; where the party owned or rented property; the location of banks where the party has accounts; and the party's employment location. *See, e.g.*, *McCormick*, 293 F.3d at 1258; *Simpson v. Fender*, 445 F. App'x 268, 269 (11th Cir. 2011) (per curiam); *Diversified Golf LLC v. Trans World Commercial & Equity, LLC*, 2012 WL 1673166, at *2-3 (M.D. Ga.).

In his deposition, Wimberly testified that he began living in Michigan as early as 2003 or 2004. Doc. 21 at 57-59. While living in Michigan, he met and married his wife, and his wife (from whom Wimberly is now separated) and stepdaughter continue to live there. *Id.* at 56, 58-59. Wimberly was employed in Michigan. *Id.* at 28-29. He had taxes withheld from his paychecks in Michigan. *Id.* at 31-32. He registered to vote in Michigan, and he apparently remains registered to vote in Michigan. *Id.* at 17-19. He obtained, and according to the evidence, continues to maintain, a Michigan driver's

license.[3]  Doc. 21 at 16.  He has not obtained a Georgia driver's license.  Finally, he

opened an account with a bank in Michigan.  *Id.* at 40-42.  Considering all of the facts

presented, the Court finds that the Plaintiff has established that Wimberly was domiciled

in Michigan when she filed her complaint.  Accordingly, the burden shifts to Wimberly to

show that his domicile changed to Georgia before the action was filed.

In an effort to prove a change in domicile to Georgia, Wimberly testified that he

has not traveled back to Michigan since the November 2014 accident.  *Id.* at 67.  He

said that he lives and has received mail at the Georgia home of his aunt, to whom he

refers as his mother because of their close relationship.  *Id.* at 11, 14, 79-80.  He has

attended church services in Georgia.  Doc. 21 at 74.  He is paid in cash by his cousin to

occasionally cut and remove trees.  *Id.* at 32, 68-69.  He claimed he has never rented

any Michigan property in his name.  *Id.* at 16-17.  Further, in an affidavit, Miranda

McLeod, Wimberly's cousin, asserted that Wimberly has resided with McLeod and her

mother since November 2014.  Doc. 17-1.  Wimberly also filed a notarized application

for a public defender in which he listed his aunt's address as his current residence.

Doc. 17-2.  Finally, Wimberly testified that he intended to remain in Georgia once he

has moved out of his aunt's home.  Doc. 21 at 73.

But the Court finds Wimberly's arguments unpersuasive.  While Wimberly

testified that he intends to remain in Georgia, his actions do not manifest such intent.

---

[3] The Plaintiff has adduced evidence that Wimberly renewed his Michigan driver's license one month after the November 8, 2014 accident.  Doc. 24-1.  Wimberly's deposition testimony on his apparently renewed Michigan driver's license is evasive and confusing.  Eventually, he refused to answer questions about his Michigan driver's license, claiming that his testimony could incriminate him.  Doc. 21 at 22.  Wimberly's refusal to testify creates an adverse inference against him.  *See Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1310 (11th Cir. 2014) ("In civil cases . . . the Supreme Court has said that 'the Fifth Amendment does not forbid inferences against parties . . . when they refuse to testify in response to probative evidence offered against them.'") (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

*See Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972) ("In determining one's 'citizenship' or 'domicile' statements of intent are entitled to little weight when in conflict with the facts.") (internal citation omitted).  Wimberly has maintained—and likely renewed—his Michigan driver's license; he has not obtained a Georgia driver's license; he has not changed his voter registration; he has not paid income taxes in Georgia; he has not worked in Georgia other than the occasional work for a cousin; he has not bought or rented a residence in Georgia; he has no Georgia bank accounts; and he has received, at most, two recent letters at his aunt's house, and one of those was from his attorney in this case.  Wimberly argues that he is unable to provide further evidence of his Georgia citizenship due to his financial situation and his reliance on family.  Doc. 17 at 6-7.  That may be, but it cuts both ways; his impecuniousness also suggests he may be unable to move his domicile to Georgia—rather, he may be here only temporarily, until the resolution of the criminal charges and civil claim arising from the collision. Considering all of the facts before the Court, the evidence Wimberly has set forth is insufficient to meet his burden to show a change in domicile.

### III.    CONCLUSION

Because the Plaintiff established Wimberly's domicile in Michigan and Wimberly failed to prove a change in domicile, this Court finds that complete diversity exists between the parties, and the Court thus has subject matter jurisdiction of the Plaintiff's claim against Wimberly.  Accordingly, the Motion (Doc. 17) is **DENIED**.

**SO ORDERED**, this 30th day of November, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT